```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
MELISSA ABRAM,

                Plaintiff,
                                              AMENDED COMPLAINT
        -against-
                                              Plaintiff Demands
THE CITY OF NEW YORK; NEW YORK CITY           Trial By Jury
POLICE OFFICER SHARIAS PORTEE, Shield
No. 10221; POLICE OFFICER "FNU" [FIRST        16 Civ. 5682 (AT)(JCF)
NAME UNKNOWN] BARNES; NEW YORK CITY
POLICE SERGEANT EREK POWERS, Shield
No. 5297; JOHN DOE SERGEANT; NEW YORK
CITY POLICE OFFICER KENNETH CLARKE,
Shield No. 8787; JOHN DOES; and
RICHARD ROES,

                Defendants.
- - - - - - - - - - - - - - - - - - -X
```

**PRELIMINARY STATEMENT**

1.  This is a civil action in which the plaintiff, MELISSA ABRAM, seeks relief for the defendants' violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983; by the United States Constitution, including its Fourth and Fourteenth Amendments.  The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2. This action is brought pursuant to the Constitution of the United States, including its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## JURY TRIAL DEMANDED

3. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

4. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c).

## PARTIES

5. Plaintiff was at all times relevant herein a resident of the State of New York.

6. Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

7. Defendants PORTEE, BARNES, POWERS, JOHN DOE SERGEANT, CLARKE and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK. Defendants PORTEE, BARNES, POWERS, JOHN DOE SERGEANT, CLARKE and JOHN DOES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in

conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants PORTEE, BARNES, POWERS, JOHN DOE SERGEANT, CLARKE and JOHN DOES are sued individually.

8.  Defendants POWERS, JOHN DOE SERGEANT, and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants POWERS, JOHN DOE SERGEANT, and RICHARD ROES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POWERS, JOHN DOE SERGEANT, and RICHARD ROES are sued individually.

**STATEMENT OF FACTS**

9. On July 19 or 20, 2013 at approximately 11:00 p.m., Plaintiff went to the NYPD 81st Precinct - which was near to her home in Bedford Stuyvesant, Brooklyn - to make a complaint concerning her landlord.

10. Plaintiff entered the 81st Precinct from a side entrance on Quincey Street that was closer to her home than the main entrance to the precinct that was located around the corner on Ralph Avenue.

11. Plaintiff had been arrested previously by officers from the 81st Precinct, and knew her way around the precinct.

12. When Plaintiff entered the Quincy Street entrance to the precinct, she passed a JOHN DOE member of the NYPD who was sitting outside in uniform, who said hello to her, and did not tell her in any way to not enter the precinct from that entrance.

13. Inside of the precinct Plaintiff saw JOHN DOE SERGEANT – a male, white, short, bald, middle-aged man – who had arrested her previously in relation to her longstanding problems with her landlord, and began to speak with him about her complaint.

14. JOHN DOE SERGEANT said he thought he remembered Plaintiff, and he and Plaintiff spoke in a friendly manner for some minutes.

15. Defendant POWERS was a short distance away as Plaintiff spoke with the JOHN DOE SERGEANT for these minutes.

16. After Plaintiff had been speaking with the JOHN DOE

SERGEANT for these minutes, Defendant POWERS began shouting, in sum and substance, "what are you doing here – come to the front [of the precinct]."

17. Plaintiff, in obedience to this command, walked the short distance through the precinct to get to the front area of the precinct.

18. When Plaintiff arrived at the front area of the precinct, approximately four male African-American JOHN DOES Officers, including Defendant POWERS, pushed Plaintiff out the front door of the precinct.

19. Once she was outside of the precinct, Plaintiff was immediately shot by Defendant POWERS with the darts of a TASER.

20. On information and belief – based upon the representation of opposing counsel – there exists an NYPD Aided Report that states that the use of force upon Plaintiff occurred on July 20, 2013 at 00:45 hours (i.e., at 12:45 a.m.).

21. On information and belief – based upon the representation of opposing counsel – the Officer named on the Aided Report is Defendant CLARKE, who on information and belief is one of the JOHN DOES who used force upon Plaintiff.

22. One of the darts from the TASER imbedded itself in Plaintiff's left breast through her shirt, and the other dart from the TASER imbedded itself in Plaintiff's neck.

23. Plaintiff is a small woman (5' tall, and approximately 145 pounds on the date of the incident), and was not behaving

violently or aggressively in any way.

24. There was no lawful justification at all for the use of a TASER upon Plaintiff in any way.

25. Further, the darts from the TASER entered Plaintiff's body at locations (the left breast and the neck) where its manufacturer, TASER International, Inc., has explicitly counseled avoidance.

26. TASER International, Inc.'s training materials have, *inter alia*, explicitly cautioned law enforcement users of its products to attempt to shoot the dart as far away from the chest as possible, in order to avoid risk to the heart; to try to aim at the lower torso (when targeting the front of the body); to shoot the darts below the neck (when targeting the rear of the body); and to be cognizant of the fact that use of a TASER frequently causes people to fall, which can cause serious injury (even from ground level), and that law enforcement using a TASER should consider the environment and the likelihood of a fall-related injury. Examples of such warnings from TASER's training power-point displays, in relevant part, are as follows[1]:

---

[1] Note: An "ECD" is an acronym for Electronic Control Device; "NMI" is an acronym for Neuromuscular Incapacitation.

## Cardiac

- Experts have identified heart to dart *distance* as being a key determining factor in whether an ECD can affect the heart.
- The *further an ECD dart is* away from the heart, the lower the risk of affecting the heart.

## Cardiac

- When possible, avoiding chest shots with ECDs reduces the risk of affecting the heart and avoids the controversy about whether ECDs do or do not affect the human heart.

Preferred Target Areas in Blue



## Preferred Target Zone Front

Lower torso (blue zone)
- More effective
  - Split hemisphere
  - Larger Muscles
- Reduces risk of hitting sensitive body areas – Refer to warnings
- Increases dart-to-heart safety margin distance
- Do not intentionally target genitals

## Preferred Target Zone Rear

- Below neck (blue zone)
  – Large muscles
  – Avoid head



## Probe Placement

- Deploy per department SOP
- Greater probe spread generally increases effectiveness
  - If practical, minimum four-inch spread
  - Narrow probe spreads typically are more effective if one probe is above the belt and the other probe is below the belt

## Probe Placement

- If practicable, deploy probes at suspect's back:
  - Clothing fits tighter
  - Surprise factor
  - Stronger muscles – usually even more overwhelming
- Aim at preferred target zones
- Avoid sensitive areas of the body



## Injuries From Falls

- NMI frequently causes people to fall
- Falls, even from ground level, can cause serious injuries
- Consider the environment and the likelihood of a fall related injury



27. On information and belief, the City of New York failed to properly train members of the NYPD to not use TASER equipment upon members of the public when an arrest can otherwise be safely effected without resort to the use of TASER equipment.

28. On information and belief, the City of New York likewise failed to properly train members of the NYPD how to use TASER devices in a manner that would avoid the heightened risks highlighted by TASER International, Inc. in its training materials.

29. Plaintiff, upon being struck by the TASER darts, felt pain from the electricity from the TASER all throughout her body, and lost control of her body and fell to the pavement.

30. When she hit the pavement Plaintiff sustained injuries to her hands, elbows, and forehead.

31. The JOHN DOES Officers then picked Plaintiff up, and brought her back into the front area of the precinct that they had just pushed her out of, and placed her in a chair and rear-handcuffed her.

32. The JOHN DOES Officers took photographs of Plaintiff's neck area with a small digital camera.

33. Plaintiff was held handcuffed in the chair, out of it and suffering from the aftermath of the electric shock, for approximately 15 or 20 minutes.

34. Plaintiff was then taken, in handcuffs in a marked NYPD car, to Woodhull Hospital Emergency Room by OFFICER BARNES (an

African-American female officer) and OFFICER PORTEE.

35. Plaintiff's handcuffs were removed at the emergency room, and OFFICERS BARNES and PORTEE left Plaintiff when Plaintiff was in the hospital's waiting room.

### FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

36. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

37. By their conduct and actions in unlawfully assaulting and battering plaintiff, falsely arresting plaintiff, unlawfully seizing plaintiff, violating rights to due process of plaintiff, failing to intercede on behalf of the plaintiff, and in failing to protect the plaintiff from the unjustified and unconstitutional treatment she received at the hands of other defendants, defendants PORTEE, BARNES, POWERS, JOHN DOE SERGEANT, CLARKE, JOHN DOES and/or RICHARD ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States

Constitution, including its Fourth and Fourteenth amendments.

38.  As a result of the foregoing, plaintiff was deprived of her liberty, experienced injury, pain and suffering, garden variety emotional distress, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

39.  The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

40.  By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants POWERS, JOHN DOE SERGEANT, and/or RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth amendments.

41.  As a result of the foregoing, plaintiff was deprived of her liberty, experienced injury, pain and suffering, garden variety emotional distress, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

42. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

43. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

44. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

45. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and

through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the use of excessive force by members of the NYPD. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

46. At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de facto</u> policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

47. At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had <u>de facto</u> policies, practices, customs and/or usages of failing to properly train supervise, and discipline members of the NYPD concerning when it is appropriate, and when it is not appropriate, to use TASER equipment upon members of the public; and concerning how, when using TASER equipment, to use it in a manner that is consistent with its manufacturer's warnings and recommendations.

48. As a result of the foregoing, plaintiff was deprived of her liberty, experienced injury, pain and suffering, garden variety emotional distress, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  The convening and empaneling of a jury to consider the merits of the claims herein;

    d.  Costs and interest and attorney's fees;

    e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:    New York, New York
           July 19, 2016

                          /S/   Jeffrey A. Rothman
                        JEFFREY A. ROTHMAN, Esq.
                        315 Broadway, Suite 200
                        New York, New York 10007
                        (212) 227-2980
                        Attorney for Plaintiff